```
            UNITED STATES DISTRICT COURT FOR THE
               MIDDLE DISTRICT OF PENNSYLVANIA

  CARLOS DEJESUS RIVERA,         :
                                 :
             Petitioner          :
                                 :   CIVIL NO. 1:CV-05-0733
         vs.                     :
                                 :   (Judge Caldwell)
  FRANK GILLIS, et al.,          :
                                 :
             Respondents.        :
```

M E M O R A N D U M

I.   Introduction

Petitioner, Carlos Rivera, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision of the Pennsylvania Board of Probation and Parole ("the Board") denying him parole. He makes the following claims. First, that the Board denied parole in violation of the Equal Protection and Due Process clauses of the United States Constitution. Second, the Board's decision violates the Ex Post Facto Clause of the federal Constitution because it applied statutory changes to the parole law made in 1996 and 2000 to an offense committed in 1994, resulting in an increase in his incarceration.

For the reasons that follow, the petition will be denied.

II.   Background

Rivera is currently serving an aggregate term of not less than nine years and six months to not more than twenty-five years imprisonment pursuant to a 1994 conviction in the Lehigh County Court of Common Pleas. (Doc. 12, Ex. 1, Martinez Decl., ¶25). His minimum sentence expired on November 23, 2003, and his maximum sentence is set to expire on May 23, 2019. (*Id*. at ¶26). He has applied for parole on two occasions and been denied each time. (*Id*. at ¶¶28, 30).

Rivera challenged his September 19, 2003, and August 23, 2004, denials by filing a petition for a writ of mandamus in the Commonwealth Court of Pennsylvania. (Doc. 3, Ex. B). On November 16, 2004, that court denied the petition. (*Id*., Ex. D). Rivera then filed a petition for an allowance of appeal in the Pennsylvania Supreme Court, which was denied on April 1, 2005. (*Id*.).

In its September 19, 2003, decision, the Board determined that Petitioner's parole eligibility would be reviewed in or after August, 2005. (*Id*., Ex. A). The notice explaining the Board's decision states that:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act of 1941, as amended, 61 P.S. § 331.1 *et seq*., the Board of probation and parole, in the exercise

>of its discretion, has determined at this time
>that: your best interests do not justify or
>require you being paroled/reparoled; and, the
>interests of the Commonwealth will be injured
>if you were paroled/reparoled.  Therefore, you
>are refused parole/reparole at this time.  The
>reasons for the Board's decision include the
>following:
>
>Your version of the nature and circumstances
>of the offense(s) committed; your need to
>participate in and complete additional
>institutional programs.
>
>You will be reviewed in or after August, 2004,
>or earlier, if recommended by the Department
>of Corrections/county prison staff.
>
>At your next interview, the Board will review
>your file and consider: whether you have
>participated in a treatment program for: sex
>offenders phase II; whether you have
>maintained a favorable recommendation for
>parole from the Department of Corrections;
>whether you have maintained a clear conduct
>record and completed the Department of
>Corrections prescriptive program(s).

(*Id.*).

In its August 23, 2004, decision, the Board determined that Petitioner's parole eligibility would be reviewed in or after February, 2006.  (*Id*.).  The notice explaining the Board's decision states that:

>Following an interview with you and a review
>of your file, and having considered all
>matters required pursuant to the Parole Act of
>1941, as amended, 61 P.S. § 331.1 *et seq*., the
>Board of probation and parole, in the exercise
>of its discretion, has determined at this time
>that: your best interests do not justify or

-3-

>           require you being paroled/reparoled; and, the
>           interests of the Commonwealth will be injured
>           if you were paroled/reparoled.  Therefore, you
>           are refused parole/reparole at this time.  The
>           reasons for the Board's decision include the
>           following:
>
>           Your need to participate in and complete
>           additional institutional programs.
>
>           You will be reviewed in or after February,
>           2006.
>
>           At your next interview, the Board will review
>           your file and consider: whether you have
>           successfully completed a treatment program
>           for: sex offenders; whether you have
>           maintained a favorable recommendation for
>           parole from the Department of Corrections;
>           whether you have maintained a clear conduct
>           record and completed the Department of
>           Corrections prescriptive program(s).

(*Id.*).

On April 12, 2005, Rivera filed his present habeas petition.  Respondents filed their response on June 8, 2005.

III.  Discussion

    A.  The Ex Post Facto Claim

In pertinent part, the Ex Post Facto Clause, U.S. Const. Art. I, § 10, cl. 1, bars a change in law that retroactively increases the punishment for a crime after its commission. *Garner v. Jones*, 529 U.S. 244, 249-50, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236, 244 (2000).  The clause covers a change in state regulatory

-4-

rules, even if the rules deal with an agency's substantive discretion in making the decision to parole. *Id.* at 250, 253, 255, 120 S.Ct. at 1367, 1369-70, 146 L.Ed.2d at 244-47. The ex post facto issue in this context is one of "particular difficulty," given the paroling agency's discretion. *Id.* at 250, 120 S.Ct. at 1367, 146 L.Ed.2d at 244. Nonetheless, if the change in the law, either on its face, or in its "practical implementation," "creates a significant risk of increasing [the inmate's] punishment" in comparison to the previous rule, the Ex Post Facto Clause forbids its enforcement against the inmate. *Id.* at 255, 120 S.Ct. at 1370, 146 L.Ed.2d at 247.

In 1996, the Pennsylvania legislature amended a section of its parole law, stating the public policy of the commonwealth toward parole. In pertinent part, the amendment changed the statutory section as follows: "the board shall first and foremost seek to protect the safety of the public." 61 P.S. § 331.1 (Purdon's 1999).[1] Before then, section 331.1 made no mention of

---

[1] After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.

pubic safety and in fact declared the public policy of the state to be that parole would be a period of rehabilitation of an inmate and his restoration to society, aided and facilitated by the parole administration.[2]

Applying the ex post facto principles set forth above, the Third Circuit ruled in *Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003), that the Board had violated petitioner Mickens-

---

In providing these benefits to the criminal justice system, *the board shall first and foremost seek to protect the safety of the public*. In addition to this goal, the board shall address input by crime victims and *assist in the fair administra- tion of justice* by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999)(emphasis added).

[2] Formerly, section 331.1 read as follows:

The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Thomas's ex post facto rights by refusing him parole after his life sentence for murder had been commuted by the governor. The court found that the 1996 change to section 331.1 had prompted the Board to adopt policies that made public safety the predominant concern in making parole decisions. Before this change public safety had been just one factor, among others, to be considered. *Id.* at 385.[3] Further, the change had increased Mickens-Thomas's punishment, as shown in part by the fact that parole guidelines and other criteria in effect before the 1996 amendment indicated that parole should have been granted. *Id.* at 387-88. The court of appeals ordered that the Board review Mickens-Thomas under pre-1996 parole rules. In two later, nonprecedential opinions, *McLaurin v. Larkins*, 76 Fed. Appx. 415 (3d Cir. 2003), and *Hollawell v. Gillis*, 65 Fed. Appx. 809 (3d Cir. 2003), the Third Circuit extended *Mickens-Thomas* to inmates convicted of other crimes.

　　　　Rivera argues that the Board likewise violated his ex post facto rights by using its post-1996 parole criteria to deny him parole, and he requests that we order the Board to review his qualification for parole under the pre-1996 law.

---

　　[3] As further support for this conclusion, the court noted that Mickens-Thomas was the first inmate of 266 to have been denied parole after a life sentence had been commuted. *Id.*

-7-

In opposition, the Board raises two arguments. First, it argues that 28 U.S.C. § 2254(d) prohibits us from granting Petitioner the relief he seeks because the Commonwealth Court, in denying Rivera's petition for a writ of mandamus, relied on the Pennsylvania Supreme Court's decision in *Finnegan v. Pennsylvania board of Probation & Parole*, 576 Pa. 59, 838 A.2d 684 (Pa. 2003). The Board contends that *Finnegan* was not "contrary to, or...an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). As a result, the Board maintains that we must defer to the state courts and dismiss Rivera's petition.

We must disagree with the Board's argument. In *Cimaszewski v. Board of Probation and Parole*, 582 Pa. 27, 45, 868 A.2d 416, 426-7 (Pa. 2005),[4] the Pennsylvania Supreme Court overturned *Finnegan* to the extent that it failed to follow the precedents of the United States Supreme Court establishing that retroactive application of "laws governing parole may violate the *ex post facto* clause." Therefore, since the Pennsylvania Supreme Court has determined that its own case law was contrary to Federal law, as determined by the United States Supreme Court, we cannot

---

[4] *Cimaszewski* was decided on February 24, 2005, prior to the filing of Rivera's habeas petition.

accept the Board's contention that we should defer to the state courts' decisions in the Petitioner's case.

The Board's second argument is that Petitioner has no *Mickens-Thomas* ex post facto claim because his parole reviews occurred after the Pennsylvania Supreme Court had decided *Winklespecht v. Pennsylvania Board of Probation & Parole,* 571 Pa. 685, 813 A.2d 688 (Pa. 2002). In *Winklespecht*, a majority of the court agreed that the 1996 changes to section 331.1 had not substantively altered the criteria for parole since "'protect[ing] the safety of the public'" and "'assist[ing] in the fair administration of justice'" had always been considerations in the parole process. *Winklespecht*, 571 Pa. at 691, 813 A.2d at 692. The additional language had merely "clarified the policy." *Id.* The significance of *Winklespecht*'s timing is that thereafter the Board would supposedly know that the 1996 statutory change had not substantively altered Pennsylvania parole law. Hence any parole decision made after *Winklespecht* would not have been made with this erroneous understanding of the parole law.

In light of *Cimaszewski*, however, we cannot accept this argument. Since the Pennsylvania Supreme Court has now acknowledged that it is possible for retroactive application of the 1996 amendments to be an ex post facto violation, the fact that Rivera was denied parole after *Winklespecht* was decided is

-9-

irrelevant in determining if an ex post facto violation occurred in this instance.

We now turn to whether the Board violated the ex post facto clause when it denied Rivera parole. The specific reasons given in Rivera's parole denials are ones that were appropriately considered before 1996 and merit denial of parole under any pre-1996 standard. For "nature and circumstances of the offense(s) committed," see 61 P.S. § 331.19 (Purdon's 1999)(cited in *Reynolds v. Pa. Bd. of Prob. & Parole*, 809 A.2d 426, 432 n.7 (Pa. Commw. 2002); for "sex offender treatment," *see Reynolds*, 809 A.2d at 433 n.9; for "additional institutional programs," *See Mickens-Thomas*, 321 F.3d at 378 (stating that "institutional adjustment(behavior and program adjustment)" were to be considered pre-1996).

Contrary to the Petitioner's assertions, there is no evidence to show that a favorable parole recommendation from the Department of Corrections mandates a grant of parole from the Board. Further, although Rivera claims that 42 Pa.C.S.A. § 9718.1, which requires treatment for sex offenders incarcerated for certain crimes prior to any consideration for parole, there is no indication that the statute was applied to him. Although the Board will consider whether Rivera has participated in institutional programs, his participation is not mandatory. (Doc. 12, Ex. 1, Martinez Decl., ¶34). There is nothing in the record

to indicate that the Board considered anything that created a significant risk of increasing Rivera's punishment.  We therefore conclude there is no ex post facto violation.

    B.    <u>Equal Protection and Due Process</u>

Rivera claims that the Board's decisions to deny him parole violate his equal protection and due process rights.  "An equal protection claim arises when an individual contends that he is receiving different treatment from that received by other individuals similarly situated."  *Kuhar v. Greensburg-Sale School Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980).  The Petitioner has not alleged that he was treated differently than others similarly situated, therefore his equal protection claim must fail.

With regard to the Petitioner's due process claim, there is no constitutionally created liberty interest in parole.  *See, e.g., Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).  Pennsylvania has not created a constitutionally protected liberty interest in parole through its statutes.  *Rodgers v. Parole Agent SCI-Frackville, Wech*, 916 F.Supp 474, 476-7 (E.D.Pa. 1996).  Since the Petitioner does not have a liberty interest in parole, his due process claim must also fail.

IV.   Conclusion

We will deny the petition.  We will also deny a certificate of appealability, based on the above analysis. However, Petitioner is advised that he has the right for thirty (30) days to appeal our order denying his petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals.  *See* Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.

We will enter an appropriate order.


                                    /s/William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge

Date: January 25, 2006

```
           UNITED STATES DISTRICT COURT FOR THE
               MIDDLE DISTRICT OF PENNSYLVANIA


CARLOS DEJESUS RIVERA,         :
                               :
      Petitioner               :
                               :   CIVIL NO. 1:CV-05-0733
      vs.                      :
                               :   (Judge Caldwell)
FRANK GILLIS, et al.,          :
                               :
      Respondents.             :
```

O R D E R

AND NOW, this 25th day of January, 2006, it is ordered that:

    1. The petition (doc. 1) for a writ of habeas corpus is denied.

    2. A certificate of appealability is denied.

    3. The Clerk of Court shall close this file.

    /s/William W. Caldwell
    William W. Caldwell
    United States District Judge